Estate of Marshall Rowe Sparks, Deceased, By L. Clay Sparks, Executor v. Commissioner.
Estate of Marshall Rowe Sparks v. Commissioner
Docket No. 14116.
United States Tax Court
1948 Tax Ct. Memo LEXIS 23; 7 T.C.M. (CCH) 914; T.C.M. (RIA) 48250; December 1, 1948
J. C. McCoy, Esq., 1320 Hudson Ave., Longview, Wash., for the petitioner. R. G. Harless, Esq., for the respondent. JOHNSON Memorandum Findings of Fact and Opinion JOHNSON, Judge: The Commissioner determined a deficiency of $30,032.68 in decedent's income tax for 1943 by adding to income reported the profits of a hardware business for April-December 1943, under the view that decedent's formal transfer of this business and its assets on April 1, 1943, to his children was lacking in substance because decedent retained management and control. Petitioner contends that the transfer was bona fide and that decedent retained no control. Findings of Fact Marshall Rowe Sparks, a resident of Vancouver, Washington, died testate on December 3, 1946, and *24 his son, L. Clay Sparks, also a resident of Vancouver, was duly appointed executor of his estate, petitioner herein. For the year 1943 decedent filed an income and victory tax return with the collector of internal revenue for the district of Washington. Decedent was the father of three sons and a daughter by his first wife, Alice D. Sparks, who died testate on February 27, 1933. For many years before the death of Alice D. Sparks she and decedent owned and operated a hardware business under the name of Sparks Hardware Company in a building owned by them on Main and Seventh Streets, Vancouver. By her will Alice D. Sparks made minor bequests to their daughter, Norma M. Craig, and to their three sons, Marshall R. Sparks, Harry W. Sparks and L. Clay Sparks, and expressing confidence that her husband would provide amply for the children, she gave, devised and bequeathed the residue of her estate unto him: "* * * and unto his heirs and assigns forever, providing he does not re-marry; but should my husband after my death remarry, then, in that event, all that remains of my estate at that time shall be divided equally between my children above named, share and share alike. "By this provision *25 I do not intend to take the management of my estate out of my said husband's control, and I especially direct that he shall have entire control and management of my said estate, and shall have full power and authority to sell, alienate, incumber or lease the same, or any part thereof, but when so sold, or alienated, should he remarry, my said children shall then have that portion thereof that would be mine should I have lived." In appointing her husband executor, Alice D. Sparks directed that no bond be required of him, and further: "* * * that my estate shall be settled without the intervention of the Probate, or any other Court, * * *." Prior to his wife's death decedent had been actively in charge of the hardware business, and thereafter he operated it as before. In 1935 he married Florence Snodgrass, but regardless of the provisions of his first wife's will, which was never contested, he continued to conduct the business as his sole proprietorship, retaining all profits from its operation and reporting them as his income until March 1943. At that time he was 83 years of age, but still active. His three sons had taken no part in the hardware business, but his daughter and *26 her husband, H. L. Craig, had been employed in it since 1926. The sons were engaged in the operation of sales agencies for the Dodge and Plymouth automobile under the name of Sparks Motor Company. Marshall and Clay Sparks resided at Vancouver, and conducted the business from premises adjoining the hardware store. Harry Sparks resided at Longview, Washington, about 45 miles distant, and managed the agency located there. Early in 1943 decedent decided to transfer the business and assets of the Sparks Hardware Company to his children. As Marshall did not wish to participate in this business, the other three gave to him bank stocks, notes and cash on account of the share of their mother's estate to which he was entitled, and resolved to continue the business as a partnership. To this end decedent on March 10, 1943, conveyed for "love and affection" to L. Clay Sparks, Harry W. Sparks and Norma May Craig the lot and building constituting the business premises by a warranty deed in which his second wife joined. This deed was recorded April 15, 1943. By a bill of sale dated March 10, 1943, and for a recited consideration of $10 he also conveyed to the three children all the property, merchandise, *27 accounts and good will of the business. He had previously withdrawn all but about $15,000 of the cash. The bill of sale was recorded April 5, 1943. Marshall Sparks then gave to the three a quit-claim deed of his interest in the real estate and a bill of sale of his right, title and interest in the personalty. The deed was dated March 20, 1943, and recorded April 5, 1943; the bill of sale was dated April 6, 1943, and recorded March 8, 1944. A memorandum of the settlement agreement between Marshall and the three was prepared, signed and sworn to by all of them on February 19, 1944. Clay and Harry Sparks and Norma May Craig executed a sworn notice that they had formed a partnership to transact business as the Sparks Hardware Company, and this notice was filed for record with the Clerk of Clark County, Washington, on April 6, 1943. It was agreed by the partners that profits and losses be shared equally and that decedent be paid $100 a month for his services to the business. Decedent reported all profits of the business up to March 31, 1943, as income taxable to him. His three children divided the profits equally among themselves thereafter, each reporting a third as his taxable income. *28 After April 1, 1943, and until a week before his death from kidney trouble on December 3, 1946, decedent continued to go regularly to the office of the hardware store; he opened mail, signed some checks, and frequently attended meetings of the three partners, but he also spent much time at golf and in his garden, being much less active in the business than before. Management was taken over by H. L. Craig who had full responsibility for the issuance of checks, the payment of bills, the ordering of merchandise, the acceptance of goods, the control of employees and the keeping of records. Craig had performed managerial functions under decedent's direction for many years and was familiar with his duties. After becoming manager, however, he allowed decedent "the privilege of doing as he pleased." Craig was assisted by his wife, who continued to work regularly at the store. Clay Sparks, whose automobile agency was in the adjoining building, was "in and out" of the store several times a day, sometimes merely walking around, sometimes attending customers. Harry Sparks, whose agency was at Longview, came to the store once or twice a month, and during the war endeavored to procure merchandise *29 for it. Important business matters were settled at meetings always attended by both of them, by the Craigs, and sometimes by decedent. Craig also consulted the two brothers by telephone in regard to business matters currently arising. After the transfer of the store and business, Clay and Harry Sparks and Norma May Craig remodeled the upper floor of the building, which had been used as a warehouse, into offices and a showroom. They endeavored to purchase an adjoining property for enlargement purposes. Failing in this, they sought another site, and eventually got one. Early in 1944 decedent engaged a certified public accountant, whom he did not then know but who had done work for the Sparks Motor Company, to prepare his 1943 income tax return. Upon being informed of the transfers of March 1943, the accountant advised decedent of the necessity for a gift tax return, and prepared one on which decedent reported one-half the value of the building, business and assets as a gift to his children. The accountant also prepared and decedent filed a 1943 income tax return on which $17,677.12 profits of the hardware business for January, February and March, 1943, were reported as decedent's income, *30 one-half thereof being taxable to his wife. And the accountant further prepared a partnership return, filed by Clay Sparks as a partner, on which profits of $39,885.69 of the hardware business for the remaining nine months of 1943 were reported, one-third thereof being declared distributable to each of the partners, Clay Sparks, Harry Sparks and Norma May Craig. The profits of the business were $4,248.25 in 1938; $10,461.02 in 1941, and $33,854.45 in 1942. Decedent effectively disposed of all his right, title and interest in and to the assets and business of the Sparks Hardware Company on or about April 1, 1943, and was thereafter employed by the partnership conducting its business at a salary of $100 a month. In determining decedent's income and victory tax for 1943, the Commissioner included in income all profits of the business for that year. Opinion Petitioner assails the inclusion of partnership profits for the period April-December 1943 in decedent's income, charging the Commissioner with error in denying recognition and effect to decedent's transfer of the business and assets of the hardware store to his three children on or about April 1, 1943. Respondent defends the *31 determination by the argument that the transfer brought about no substantive change in decedent's relation to the business; that its profits were earned by his management and services as before; that the children contributed no property and no vital services, and that decedent's real purpose was to free himself from taxes on the profits, which in 1943 were materially greater than in preceding years. Commissioner v. Tower, 327 U.S. 280; Lusthaus v. Commissioner, 327 U.S. 293, and Higgins v. Smith, 308 U.S. 473, are cited as justifying the taxing of these profits to decedent under section 22 (a), Internal Revenue Code. In his brief respondent describes the proceeding as "another 'family partnership' case." But it obviously differs from such cases in that they have involved the taxpayer's association of one or more members of his family with him in an ostensible partnership while here decedent purported to divest himself entirely of any proprietary interest in the business and to become merely a salaried employee. But to some extent the rationale of the cited cases and others involving family partnerships is pertinent to *32 a taxpayer's ostensible divestment of his entire interest in property or business by transfer to a close relative, J. M. Henson, 10 T.C. 491; Robert E. Werner, 7 T.C. 39; Wade Allen, 6 T.C. 899; for in either event one can not escape tax on income produced by his own efforts or by property which, although transferred by him, remains in fact subject to his dominion and control. Helvering v. Clifford, 309 U.S. 331; Lucas v. Earl, 281 U.S. 111. Admitting, as he must, that according to the evidence decedent's four children became entitled in 1937 to a half interest in the business by virtue of decedent's remarriage, and that decedent made formal transfer of all his own interest in the business to the children in March 1943, respondent contends nonetheless that decedent should not be regarded as having "divested himself completely of any ownership in the business" because such a view "overlooks the realities of the situation, and ignores what was actually done." Applying tests of bearing on the propriety of recognizing a family partnership for tax purposes, respondent minimizes the value of the services rendered by Norma *33 May Craig $ ;:$ discounts as nominal the participation of Clay and Harry Sparks who were occupied with their motor sales agencies; refers to the alleged partners' failure to contribute any cash or other capital apart from their mother's bequest, and stresses their lack of knowledge and experience in the business. Despite testimony to the contrary, respondent urges that after the formal transfer decedent really continued to manage and control the business as before; that he acted as the owner and should be so taxed. To fortify this view and rebut testimony, which was all to the contrary, respondent adverts to a "Memorandum of Partnership Agreement," dated February 17, 1944, wherein the alleged partners refer to decedent as a "Special Partner" who "has been in the active management and control" of the business since March 31, 1943, and "would continue in the active management and control of said business." A copy of this document, which was not introduced in evidence, was attached to the petition as Exhibit B and is described in paragraph 5-E of the petition as true and correct. But as respondent in his answer "denies each and every material allegation" of that paragraph, the memorandum *34 mentioned is not properly before the Court, Relying on it, however, respondent professes "very considerable doubt" that the children, formed any partnership in 1943, pointing out that the memorandum was made in 1944 at the account's suggestion and that while Marshall Sparks' bill of sale of his interest in his mother's bequest was dated April 6, 1943, it was not recorded until March 8, 1944, and a memorandum of the settlement agreement is dated February 19, 1944; furthermore the evidence of what cash was left by decedent in the business is vague. We have set forth respondent's contentions in some detail in view of the stress laid by him on the "Memorandum of Partnership Agreement," but we are of opinion that his argument is not germane to the issue. The disposition of this proceeding turns on the effectiveness of decedent's alienation of the hardware business and its assets, not on the propriety of recognizing the childrens' partnership for tax purposes. The tax liability of them and their spouses is not before the Court since the deficiency was determined only against decedent's estate. If decedent did not own the business and did not earn its income after the transfers, he is not *35 taxable on that income irrespective of the manner in which the transferees conducted the business thereafter or the use to which they put the assets. A review of the record convinces us and we have found that decedent did effectively dispose of all his right, title and interest in and to the assets and business of the Sparks Hardware Company on or about April 1, 1943. His conveyances were in proper legal form, and he took none of the income thereafter for himself except the salary of $100 a month. It is true that he continued to go to the office and was allowed to open mail, sign some checks and attend business meetings of the partners. But we perceive nothing in this conduct tending to refute the bona fides of his transfers. Decedent had made of the business his life work. On April 1, 1943, he was 83 years of age, but did not wish to cut himself off entirely from his habitual routine. It is understandable that his children should be indulgent to this wish and should want his advice; and that, as one son testified, he was "always welcome." But although decedent was an active man at 83 years of age, we can easily believe his daughter's statement that on transferring the business with *36 its responsibilities, he gave "a great sigh of relief," and the real management thereafter devolved upon Craig who had assisted for many years in conducting the store. Craig, of course, was subject to the three partner-owners. Respondent argues that decedent "was making more money than he wished during a period of high taxation and conceived the method here set forth to reduce his burden some tax liability." But the "method conceived" was not the mere reallocation of income among members of a family group which has often been denied recognition for tax purposes; it involved a transfer of all interest and a complete withdrawal from propriety participation. Decedent did not associate his children with him in a partnership; transferring the whole business to them, he eliminated himself. We might believe him tax conscious, as respondent charges, if he had retained some participating interest and continued to exercise management and control, but in fact he seems to have been so unaware of tax consequences that he never made any endeavor to treat the children as partners in preceding years although such a claim would have derived colorable support from their rights under the mother's will *37 to a half interest in the business upon his remarriage. The existence of these rights, which were ignored until 1943 but never challenged, is alone sufficient to render the Commissioner's determination untenable, for by the transfers decedent passed from himself only a half interest in the business and assets, the other half interest being property to which the children were entitled by virtue of their mother's will. Such rights were accorded full recognition by the parties concerned, for the interest of the child who was not a party to the partnership agreement was purchased by and transferred to the three who were. Hence decedent was not even in a position to give more than a half interest to the children. In doing so by formal conveyances and in transferring to them at the same time the other half interest as contemplated by the mother's will, in our opinion he intended to and did effectively alienate all his interest in the business and assets. His subsequent advice and work at the office, which was compensated, are not inconsistent with a bona fide transfer. The Commissioner's determination is reversed. Decision will be entered under Rule 50.